VINCENT LUCAS,                                          Case No. 1:16-cv-790

        Plaintiff,                                          Barrett, J.
                                                        Bowman, M.J.

    v.

DESILVA AUTOMOTIVE SERVICES, et al.,

        Defendants.

## REPORT AND RECOMMENDATION

### I.    Background

Plaintiff Vincent Lucas ("Lucas") is an experienced *pro se* litigant who frequently litigates claims against Defendants that he believes have illegally placed telemarketing calls to his home telephone number.[1] Plaintiff initiated this lawsuit on July 27, 2016, by paying the requisite filing fee and filing a complaint that alleged only that "John Doe" Defendants had violated federal law by engaging in illegal telemarketing practices. Although Plaintiff failed to identify any of the "John Does" within the first 90 days after filing suit, he eventually identified a total of seventeen Defendants alleged to be responsible for various calls on multiple dates.

---

[1]Plaintiff has filed at least 8 lawsuits in this Court alone, all containing similar allegations of illegal telemarketing practices.  In addition to the above captioned case, *see* Case No. 1:11-cv-409 (closed), Case No. 1:12-cv-630, Case No. 1:15-cv-108 (closed), Case No. 1:16-cv-1102, Case No. 1:16-cv-1127 (closed), Case No. 1:17-cv-47 (closed); Case No. 1:17-cv-374 (closed); *see also* Case No. 1:17-mc-02, (administratively closed due to pre-existing civil case).  Plaintiff's filings in this Court allude to related litigation he has pursued in state courts.

More than a year after Plaintiff had initiated suit, on September 12, 2017, the undersigned magistrate judge[2] granted Plaintiff leave to file a second amended complaint. At the same time, the Court entered a calendar order. (Docs. 106, 121). On October 19, 2017, the undersigned filed a Report and Recommendation ("R&R") that recommended rulings on approximately a dozen motions, most of which had been filed by Plaintiff. (Doc. 122). Plaintiff vigorously objected to that R&R, (Doc. 123), and those objections were submitted to the presiding district judge, U.S. District Judge Michael R. Barrett, for *de novo* review. On March 31, 2018, Judge Barrett adopted the R&R as the opinion of the Court, with one notable exception discussed below. (Doc. 156).

On November 16, 2017, Defendants 310 Network Inc., NexInteractive Inc., and Rodolfo Salazar (hereinafter the "Salazar Defendants"), through counsel, filed a motion to dismiss, asserting that this Court lacks personal jurisdiction over them. (Doc. 124). While that motion remained pending, the parties proceeded with contentious discovery, leading to multiple rulings by the undersigned on disputed issues. (Docs. 126, 134, 138, 139, 143).

Defendants' motion to dismiss for lack of jurisdiction remains pending and is addressed by this R&R, along with a motion more recently filed by Plaintiff that seeks to

---

[2]Shakespeare once famously wrote that a rose "by any other name would smell as sweet." Still, lawyers and judges strive to be precise. Defense counsel and Plaintiff both misidentify the undersigned as "Magistrate" rather than "Magistrate Judge." The title of Magistrate no longer exists in the U.S. Courts, having been changed to "Magistrate Judge" in 1990. *See* Judicial Improvements Act of 1990, 104 Stat. 5089, Pub. L. No. 101-650, §321 (1990). In federal court, the designation "Magistrate" before "Judge" is an adjective that denotes the type of federal judicial officer, similar to the use of the word "Bankruptcy" in describing a U.S. Bankruptcy Judge. Thus, the correct title for a judicial officer with the surname of Smith would be "Magistrate Judge Smith" or "Judge Smith," not Magistrate Smith.

hold the Defendants in both civil and criminal contempt.[3]  For the following reasons, I recommend that Defendants' motion be granted and that Plaintiff's motion be denied.

## II.    Defendants' Motion to Dismiss

Plaintiff seeks to hold the three Salazar Defendants liable for four telephone calls he received on separate dates in February 2015.  Plaintiff alleges that the Salazar Defendants are liable under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §§227(b) and 227(c), the Ohio Telephone Solicitation Act, the Ohio Consumer Sales Practices Act, and for alleged regulatory violations of the Public Utility Commission of Ohio.  (Doc. 108).   Plaintiff further alleges that all seventeen identified defendants, including the Salazar Defendants, committed a "pattern of corrupt activity under Ohio Rev. Code § 2923.32," that "Salazar personally participated in or authorized the violation of the TCPA and OCSPA," that "Salazar has failed to follow the corporate formalities" for NexInteractive, Inc. and 310 Networks, and that Salazar is "personally liable for the actions of the respective companies." (*Id*. at ¶¶94-96).  Plaintiff seeks the imposition of joint and several liability against the Salazar Defendants for "at least $18,000" in statutory damages, the imposition of treble damages, and permanent injunctive relief, as well as "costs, attorney fees, and interest." (Doc. 108 at 14).

The Salazar Defendants argue that the allegations do not satisfy the requirements of Ohio's long-arm statute, Ohio R.C. §2307.382, or the Due Process Clause of the U.S. Constitution to permit this Court to exercise personal jurisdiction over them.

---

[3]Plaintiff's motion for leave to file a supplemental memorandum, and motion to amend/correct existing objections to the undersigned's telephone conference, (Docs. 144, 149), are both addressed by separate Order.

**A.  The Threshold Issues of Waiver and Consent to Personal Jurisdiction**

Before turning to the merits of Defendants' motion, the Court must address threshold issues of waiver and consent. Plaintiff argues that the Salazar Defendants have consented to the Court's personal jurisdiction and/or waived their personal jurisdiction defense through their conduct.

Plaintiff served Defendant Salazar on January 12, 2017, and served Defendants 310 Network, Inc. and NexInteractive, Inc. on or about January 17, 2017.  Plaintiff sought and obtained a Clerk's entry of default after Defendant Salazar failed to timely answer Plaintiff's amended complaint.  (Doc. 29).  On March 20, 2017, Plaintiff filed a motion seeking default judgment against Salazar.  (Doc. 68).  Thereafter, Salazar sent a letter to the Court, which the Clerk of Court construed and docketed as an Answer on April 18, 2017. (Doc. 74).  On May 30, 2017, after Plaintiff filed his first motion to amend/correct his amended complaint (Doc. 80), Salazar sent a second letter to the Clerk of Court, which the Clerk also construed and docketed as an Answer.  (Doc. 89).  On July 21, 2017, Salazar filed a third pro se document, which was docketed as a Motion to Dismiss on behalf of all three Salazar Defendants. (Doc. 98).   None of the referenced pro se documents sent to the Court by Salazar raised the affirmative defense of personal jurisdiction.

Based upon the failure of Salazar to raise the defense in his three pro se communications, Plaintiff argues that Salazar has consented to the jurisdiction of this Court over his person, and also has consented to jurisdiction over the two corporations associated with him.  For similar reasons, Plaintiff argues that Salazar has waived any personal jurisdiction defense.  However, Judge Barrett recently determined that the two

letters were improperly construed by the Clerk as responsive pleadings. In the same Order, Judge Barrett struck Salazar's pro se motion to dismiss from the record. (Doc. 156). Judge Barrett's Order is controlling and dispositive on all issues presented concerning the Salazar Defendants' alleged consent and/or waiver of their personal jurisdiction defense.

By way of background, on August 21, 2017, newly retained counsel entered his appearance on behalf of the Salazar Defendants. (Doc. 103). After Plaintiff was granted leave to file a Second Amended Complaint, Defendants, through counsel, filed an answer and a motion to dismiss, both of which assert the defense of personal jurisdiction. Plaintiff initially objected to the Salazar Defendants being permitted to file an Answer to the Second Amended Complaint, based in part on arguments that Salazar exhibited undue delay and failed to cure deficiencies in his earlier pro se filings. Both the undersigned in her R&R and Judge Barrett rejected Plaintiff's arguments. (*See* Doc. 156 at 19-20). In overruling Plaintiff's Objections to the R&R, Judge Barrett explained that Salazar's initial pro se communications had been improperly construed by the Clerk of Court as pleadings:

> Plaintiff's initial pro se letters were construed by the clerk and docketed as answers, but the Court is not convinced they should be treated as such. Plaintiff appears to concede that the letters are not easily classifiable. (Doc. 68; PageID 261). Indeed, Defendant Salazar's letters could be construed as inquiries to the Clerk's Office about whether the summons/complaint were legitimately issued by the Clerk, as Defendant Salazar feared he had received essentially a counterfeit summons. (Doc. 68; PageID 269). See also Doc. 112-3, PageID 682. **Thus, under the specific facts of this case, the Court declines to treat Defendant Salazar's letters as his initial responsive papers.**

(Doc. 156 at 20, n.6)(emphasis added).

In his objections to the R&R, Plaintiff maintained that even if the Court did not strike the Defendants' Answer in its entirety, the Court should at least strike the affirmative defenses of personal jurisdiction and improper venue. However, Judge Barrett also rejected Plaintiff's arguments that Salazar had forfeited those defenses:

> Plaintiff argues that Defendant Salazar waived his personal jurisdiction and venue defenses because they were not included "in his original answer or motion permitted by Rule 12." However, the defense is included [in] the original answer (Doc. 109), as this Court has declined to treat Defendant Salazar's pro se letters to the Clerk as his initial pleadings. *See* n. 6, supra. Furthermore, Salazar's only motion pre-dating the answer has *been* stricken, per Plaintiff's request. *See* n. 1, *supra*. Therefore, there has been technical compliance with Rule 12(h). ...Furthermore, the Court is not persuaded that Defendant Salazar's early conduct in this litigation created the "expectation" that he intended to defend on the merits. Indeed, Plaintiff has argued that Defendant Salazar's early resistance to participating in this litigation amounts to sanctionable conduct. Plaintiff cannot have it both ways.
>
> Accordingly, Plaintiff's forfeiture objection is overruled.

(Doc. 156 at 22, distinguishing *King v. Taylor*, 694 F.3d 650, 656 (6th Cir. 2012) and *State Auto Ins. Co. v. Thomas Landscaping & Constr., Inc.*, 494 Fed. Appx. 550, 554 (6th Cir. 2012)(affirming waiver on grounds that the defendant's pro se Answer was never stricken). In short, based upon the thorough analysis and rulings contained in Judge Barrett's Order of March 31, 2018, none of the three Salazar Defendants have consented to the jurisdiction of this Court or waived their right to assert the affirmative defense of this Court's lack of personal jurisdiction.

To the extent that Plaintiff may be arguing that the two corporate entities lack the capacity to present any defense at all, including but not limited to the affirmative defense of personal jurisdiction, based upon their "suspended" status in California, Judge Barrett's recent Order also resolved that issue.

> [T]he Court is persuaded that the proper course is to treat these two corporations as "unincorporated associations," which – regardless of state law on capacity – may "be sued" where enforcement of a federal right is at issue. Because this Court is exercising its federal question jurisdiction over the TCPA claim, and Rule 17(b)(3)(a) confers on Defendants 310 Network, Inc. and NexInteractive, Inc. the capacity to present a defense, so to[o] may they present a defense to the claims over which this Court exercises supplemental jurisdiction.

(Doc. 156 at 13).

Plaintiff also argues that the Defendants waived the personal jurisdiction defense when newly retained counsel filed a Notice of Appearance on August 21, 2017. (See Doc. 103). In his opposition to Defendants' motion to dismiss, Plaintiff cites *Gerber v. Riordan*, 649 F. 3d 514 (6th Cir. 2011) to argue that a general Notice of Appearance by counsel waives both service and the defense of personal jurisdiction. In his Objections to the undersigned's October 2017 R&R, Plaintiff also cited *Gerber* to support his waiver argument, maintaining that, contrary to Defendants' position, that case has not been "abrogated." (Doc. 123-1 at 20 and n.25).

Although Judge Barrett's March 31, 2018 Order does not specifically discuss *Gerber*, the Court did cite *King v. Taylor*, a post-*Gerber* case in which the Sixth Circuit clarified that the mere filing of an appearance is not sufficient to waive service. *See King*, 694 F.3d at 656 n. 7. More importantly, Judge Barrett unequivocally held that the Salazar Defendants had not waived or forfeited their right to present a personal jurisdiction defense to Plaintiff's Second Amended Complaint. (*See* Docs. 109, 124). Judge Barrett's rulings represent the law of the case on these issues. The undersigned further finds persuasive the Defendants' arguments that post-*Gerber* case law, including

*Taylor* and other lower court cases, have appropriately rejected the broad interpretation of *Gerber* advocated by Plaintiff. Additionally, *Gerber* is factually distinguishable.

For similar reasons, and based upon Judge Barrett's rejection of the same argument, the undersigned rejects Plaintiff's argument that the Defendants waived their personal jurisdiction defense through conduct that gave the "reasonable expectation" that they intended to defend the case on the merits. (*Accord* Doc. 156 at 21-22). In short, I find no waiver on the record presented.

**B.  The Merits of Defendants' Motion To Dismiss: A Lack of Ohio Contacts**

Having determined that the Salazar Defendants have neither consented to personal jurisdiction in this Court nor waived their ability to present that defense, the undersigned turns to the merits of the Defendants' motion. The Defendants argue that they do not transact business in Ohio and do not contract to provide goods or services in this state.

"The plaintiff bears the burden of demonstrating that such jurisdiction exists…. Additionally, in the face of a properly supported motion for dismissal, the plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir.1991)(internal citations omitted). When the matter is resolved on written submissions alone, the plaintiff will satisfy his burden if he can make a "*prima facie* showing" of personal jurisdiction. By contrast, when a pretrial-evidentiary hearing is conducted, the preponderance-of-the-evidence standard applies. *Schneider v. Hardesty*, 669 F.3d 693, 697 (6th Cir. 2012)(citing *Serras v. First Tennessee Bank National Association,* 875 F.2d 1212, 1214 (6th Cir.1989)). On the written record

presented, and assuming that the lower *prima facie* standard applies, the undersigned recommends that the Defendants' motion be granted, because all of the specific facts Lucas has alleged "collectively fail[] to state a *prima facie* case for jurisdiction." *Theunissen*, 935 F.2d at 1459.

As grounds for the exercise of personal jurisdiction, Plaintiff relies in part on *Advanced Dermatology v. Adv-Care Pharmacy, Inc.*, 2017 WL 5067576 (N.D. Ohio, 2017), a recent unpublished TCPA case from the Northern District of Ohio. In that case, the district court denied a Canadian defendant's motion to dismiss a TCPA claim, where either the defendant, or a third-party telemarketer on its behalf, sent unwanted telemarketing faxes to Plaintiff's office fax machine without his consent. Although the undersigned finds *Advanced Dermatology* to be factually distinguishable, its explanation of Ohio's long-arm statute is helpful:

> [U]nder Ohio law, "personal jurisdiction over non-resident defendants is available only if (1) the long-arm statute confers jurisdiction and (2) jurisdiction is proper under the Federal Due Process Clause." *Conn v. Zakharov*, 667 F.3d 705, 711 (6th Cir. 2012). The critical constitutional due process inquiry is whether the defendant has sufficient "minimum contacts" with the forum state so that the district court's exercise of jurisdiction over it comports with "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Depending on the type of minimum contacts in a case, personal jurisdiction can either be general or specific. *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1263 (6th Cir. 1996); *Reynolds v. Intern. Amateur Athletic Ass'n,* 23 F.3d 1110, 1116 (6th Cir. 1994). General jurisdiction exists where a defendant's "continuous and systematic" contacts with a forum render the defendant amenable to suit in any lawsuit brought against it in the forum. Specific jurisdiction exists if the subject matter of the lawsuit arises out of or is related to the defendant's contacts with the forum. *See Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co., Ltd.*, 91 F.3d 790, 793 (6th Cir. 1996). In this case, only specific jurisdiction is applicable. The Sixth Circuit has consistently applied the following criteria to determine whether specific jurisdiction exists:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum to make the exercise of jurisdiction over the defendant reasonable.
>
> *CompuServe, Inc. v. Patterson*, 89 F.3d 1257,

*Id.*, 2017 WL 5067576, at *2–3.

Although a plaintiff may not stand upon the allegations of his complaint to refute a challenge to personal jurisdiction, it is helpful to begin with those allegations. Here, Plaintiff asserts that specific personal jurisdiction exists over all three Salazar Defendants, based upon allegations that the Defendants initiated and/or made four calls to his residential phone line in Amelia, Ohio. Mindful that the TCPA generally imposes liability only upon those who "initiate" illegal calls or upon the "seller on whose behalf a call is made,"[4] Plaintiff's Second Amended Complaint specifically alleges that Defendant NexInteractive Inc. "initiated" the four calls, that Defendant 310 Network Inc. "acquired the telephone number" and "provided it to NexInteractive Inc. for use in telemarketing," and that on "information and belief, Rodolfo Salazar, acting alone or in concert with others, personally formulated, directed, controlled, had the authority to control, or participated in the acts and practices of 310 Network Inc. and NexInteractive Inc. set forth in this Complaint." (Doc. 108 at ¶¶53, 54, 58). In addition, Plaintiff alleges that "NexInteractive Inc. or 310 Network Inc. was calling on behalf of [an unidentified]

---

[4] *See generally, In re Dish Network, LLC*, 28 FCC Rcd. 5674, 2013 WL 1934349 (May 9, 2013). Although not all "robo-calls" violate the law, the TCPA prohibits calls made in a particular manner, by a caller who does not have an established business relationship with the person being called, and without that party's consent.

Competitive Retail Electric Service provider who is subject to the jurisdiction of the Public Utilities Commission of Ohio." (*Id.* at ¶55). Plaintiff alleges "actual injury" because "listening to the calls wasted my time." (*Id.* at ¶63).

In contrast to the allegations in the complaint, Defendants' affidavits set forth facts which, together with the parties' discovery responses, make abundantly clear that none of the Defendants physically placed any of the four telemarketing calls to Plaintiff's Ohio residence. Without such minimum contacts by the Defendants, Plaintiff has failed to make a *prima facie* case that any of the Salazar Defendants' conduct or connection to Ohio was "such that he should reasonably anticipate being haled into court there." *Burger King Corp. v. Rudzewicz*, 105 S.Ct. 2174, 2183, 471 U.S. 462, 474 (1985). Rather, Defendants' only contact with Ohio appears to have been their "random," "fortuitous," or "attenuated" contacts with whatever unknown telemarketer contacted Plaintiff on four occasions in February 2015. *Id.*

It is undisputed that Defendant Salazar resides in California, where both Salazar entity Defendants are registered to do business. Defendants concede that Salazar is listed as CEO, CFO and President of both 310 Network and NexInteractive, Inc. However, neither of the entity Defendants is registered to do business in Ohio, and the Defendants are not physically located in Ohio. Defendants' unrefuted affidavit explains that Defendant companies provide "PBX Telephony Services, specifically, software systems, to companies that operate various types of call services and call services centers." (Doc. 124-1 at ¶1). Defendants' customers are presumed to include telemarketers and telemarketing companies, who may purchase Defendants' "software

and dialing technology" in order to place calls on behalf of others. (Doc. 124-1, Salazar Affidavit at ¶ 12).

The offending telephone number, (440) 721-4682, reflects an Ohio area code and was identified on Plaintiff's caller ID as originating from "Painesville, Ohio." Defendants admit that in or around February 2015, "a company in which Defendant Rodolfo Salazar is a shareholder" leased the offending telephone number from Ladera Communications ("Ladera"), a nonparty California telecommunications service provider. (Doc. 124-1 at 6, Response to Request for Admission 1). Despite the admission that some entity affiliated with Salazar leased the offending number from Ladera, Defendants' discovery responses and the Salazar affidavit both expressly deny that either of the two Defendant entities, 310 Network or NexInteractive Inc.,[5] leased the number from Ladera.[6]

The number displayed on Plaintiff's caller ID is a "DID" or "direct inward dialing" telephone number, which is typically "provided by a local telephone company or local

_____

[5]When he refers to the entity called "NexInteractive" in his affidavit, Rodolfo Salazar indicates he means the identified Defendant, NexInteractive, Inc. (*See* Doc. 124-1 at ¶1, shortening the name of NexInteractive, Inc. to "NexInteractive"). In their motion to dismiss, Defendants maintain that NexInteractive, Inc. could not have had any contact with Ohio in part because it is allegedly a "dormant" corporation that has never functioned or done any business. Despite Salazar's use of the same name, "NexInteractive," to refer to the named Defendant, Defendants simultaneously distinguish NexInteractive **Inc.** from NexInteractive, which Defendants maintain is a separate company in which Rodolfo Salazar is also a shareholder. Defendants state that the latter "NexInteractive" is not a corporation and does not use the "Inc." designation when using the tradename. (Doc. 124 at 4, n.2). However, Defendants add to the confusion in their reply in support of their motion to dismiss, when they use "NexInteractive" to "collectively" refer to "NexInteractive (current company), NexInteractive, Inc. and 310 Network, Inc. (past companies)." (Doc. 142 at 11, n.5).
Plaintiff disputes that NexInteractive and NexInteractive Inc. are separate entities. His complaint alleges that Salazar is personally liable for both entities due to his disregard of corporate formalities. (Doc. 108; Doc. 142-1 at n.1).
[6]According to Defendants, 310 Network, Inc. did not lease any telephone numbers in February 2015, because it was not a functioning entity at that time. (Doc. 124-1 at 7-8, Response to Requests for Production Nos. 1-3). Similarly, Defendants state that NexInteractive Inc. "has never been a functioning entity and did not use telephone number (440) 722-4682," nor did it assign that number to any clients. (Doc. 124-1 at 8, Response to Requests for Production 1).

exchange carrier …for calling into a company's private branch exchange ("PBX") system."

> When a call is made to an outside telephone number, the DID telephone number is displayed as the automatic number identification ("ANI") on the recipient's caller ID. …The DID telephone number displayed as the ANI on the caller ID is not the telephone number from which the call originated… The purpose of the DID service is to allow those people receiving telephone calls to contact the person or company on whose behalf a telephone call is being made, not to contact the person or company actually making the telephone call itself.

(Doc. 142 at 11-12, citing Salazar Supplemental Affidavit, Ex. 2 at ¶4).  Although a DID number is intended to be used only for inbound calls and not to make outbound calls, the record is unclear as to whether the referenced DID number technically *could* have been used to make the four outbound calls in February 2015.

Based upon emails from Ladera and other information,[7] (Docs. 140-3 and 140-4), Plaintiff disputes Defendants' assertion that neither of the Salazar Defendant companies leased the offending DID number from Ladera in February 2015.  Plaintiff also disputes Defendants' representation that the named Defendant, "NexInteractive Inc.," and nonparty "NexInteractive" are separate entities.  For the reasons discussed below, I conclude that those disputed facts are not material, because even if one of the Defendants leased the telephone number from Ladera, and even if the Defendants did not observe appropriate corporate formalities,[8] their activities and contacts with Ohio still are insufficient to justify the exercise of personal jurisdiction.

---

[7] Defendants challenge Plaintiff's use of the referenced email exhibits as unauthenticated hearsay statements.  Defendants argue that when Ladera assigns a block of DID telephone numbers to a reseller like Defendants, Ladera has no way to determine outside of its direct customer [Defendants] who the end-user of the telephone number may be.

[8] Ordinarily, to the extent that the three Defendants exist separately, Plaintiff bears the burden of establishing personal jurisdiction over each of them "independently*." Beydown v. Wataniya Rest.*

Highly relevant to the issue of personal jurisdiction is the statement in the Salazar affidavit that none of the three Defendants "call individual persons or individual consumers for telemarketing purposes" and that they "do not call individual persons or individual consumers for any purpose which would be prohibited" under the TCPA or related laws. (Doc. 124-1 at ¶2). The undersigned has carefully reviewed Plaintiff's own affidavit in opposition to Defendants' motion and finds Defendants' statement in this regard to be uncontested. In other words, it is undisputed that none of the Defendants themselves engage <u>directly</u> in telemarketing. Instead, Defendants are in the business of selling software services to companies that include telemarketing businesses. With respect to the four calls at issue, the affidavit further states that none of the Salazar Defendants have ever made any calls on behalf of any "competitive retail electric service provider," and that none of the Defendants or their employees "initiated, placed or made any of the four calls" that are described in Plaintiff's Second Amended Complaint. (Doc. 124-1 at ¶¶ 4, 9). The Defendants are not in the business of selling electricity and are not telemarketers, insofar as that term is commonly understood. Instead, "310 Network and NexInteractive provide software and dialing technology for businesses who call other businesses for sales or consumer support matters; but Salazar, 310 Network and NexInteractive do not control who such businesses call." (*Id.*, Affidavit at ¶ 12).

Defendants' motion to dismiss acknowledges that a business to which the Salazar entities sold software may have "turned around and used the software from [Defendant Salazar] to call Mr. Lucas in Ohio." (Doc. 124 at 9). Indeed, that is

---

*Holding, Q.S.C.*, 768 F.3d 499, 503 (6th Cir. 2014)(quotation omitted).

precisely what Plaintiff "believes" occurred. His discovery responses explain that his

theory of liability is based upon the "services" that the Defendants provide to

unidentified telemarketing companies:

> I believe that…NexInteractive provides all the services to consumer telemarketers…. I believe that NexInteractive's predictive dialer, which was running on a server operated by NexInteractive, used NexInteractive's telephone number (440) 721-4682 to dial my telephone number in order to make the four telephone calls that are the subject of this litigation. I believe that after NexInteractive's predictive dialer detects that it has a live person at the other end of the phone line (as opposed to a busy signal or an answering machine), the predictive dialer transfers the call to the client of NexInteractive on whose behalf NexInteractive dialed the call. My beliefs are supported by the printouts of the nexinteractive.com website….<u>I believe that NexInteractive was so involved in the placing of the calls to me that they "initiated" the calls within the meaning of the TCPA as interpreted by the FCC in its 2015 Declaratory Rulng, FCC 15-72</u>…..
>
> <u>I believe that NexInteractive willfully ignores use of its services for unlawful telemarketing</u>.

(Doc. 142-1 at 2-3, emphasis added).[9] As further support for his claims, Plaintiff points

to an April 15, 2017 email response from Salazar to an email inquiry from Plaintiff.

Salazar's response states:

> Who are you. Why are you going after me WTH man. we provide PBX and dialer systems for business who call business and consumers. They may call for tele sales, payment reminders, callbacks and customer support matters. We cannot control who they call, they can call whoever the hell they want. If they call a number that is on a DNC register than

---

[9]Plaintiff's theory of liability refers to FCC 15-72, or as it is more formally known, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Declaratory Ruling and Order, 30 F.C.C.R. 7961, 2015 WL 4387780 (July 10, 2015). That FCC ruling was published *after* the calls were made to Plaintiff in this case. Even if retroactively applicable to those calls, the 2015 ruling does not support Plaintiff's theory of recovery. The ruling clarified that a business that markets its cloud-based dialer services to customers is not liable under the TCPA, which does not envision liability for those "persons or entities, such as third-party retailers, that might merely have some role, however minor, in the causal chain that results in the making of a telephone call." *Id.* at 10-11. Although the undersigned expresses no opinion on whether the Sixth Circuit would follow suite, the Court of Appeals for the District of Columbia Circuit recently vacated several aspects of FCC 15-72. *ACA Int'l v. Federal Communications Commission*, 885 F.3d 687 (D.C. Cir. 2018).

that is an issue between the end user and the business who called them no tme.  Get it right.

(Doc. 140-6 at 1).

Plaintiff's own discovery responses confirm that he does not actually know who "initiated" the call by placing it to his residence, and that he also does not know the identity of the "seller" on whose behalf the call was placed.  Instead, Plaintiff generally expresses his "belief" that the caller was an unknown person or company seeking to sell him electricity on behalf of a company called "NStar":

> I believe that the electric company on whose behalf NexInteractive dialed my number is likely associated with Eversource Energy.  My belief is supported by the consumer complaints regarding (440) 721-4682 listed on 800notes.com…which [defense counsel] emailed to me.  The complaints that make an allegation of who the caller is nearly unanimously allege that "NStar" is responsible for the calls. (NSTar Electric is a subsidiary of Eversource Energy.)  The exact association of the caller to Eversource Energy is unknown.  For example, <u>the caller could have been a subsidiary of Eversource Energy who does business using the name "NStar". Eversource Energy has many subsidiaries.  The caller could have been a company who licensed the use of the name "NStar" from Eversource Energy, because of the same recognition and reputation of "NStar".  The caller could have been a telemarketing company who was hired by any of these companies.</u>  The caller was evasive when directly asked what company he works for….

(Doc. 142-1 at 4).   Even though it is clear that none of the Salazar Defendants were the "caller" or the "seller" on any of the four calls, Plaintiff argues that they "purposely directed their activities into Ohio by (a) leasing a telephone number with an Ohio area code and (b) using that number and their predictive dialer to dial [Plaintiff's] Ohio residential telephone number."  (Doc. 140 at 1).

Despite Plaintiff's characterization in his legal argument that one or all of the Defendants "dialed" his number, he offers no evidence to dispute the Salazar affidavit

that they did not physically dial his number. Instead, the record reflects that software/technology sold by Defendants may have been utilized in an illegal manner by an unidentified party, who may or may not have been one of Defendants' direct customers. Plaintiff's position that the fact that the California Defendants leased an "Ohio" area code number from another (non-party) California company, with knowledge that a downstream customer may use that Ohio number to call someone in Ohio, is insufficient to show that the *Defendants'* contacts with Ohio should subject them personal jurisdiction. *See Campinha-Bacote v. Wick*, Case No. 1:15-cv-277-MRB, 2015 WL 7354014 at *4-5 (S.D. Ohio Nov. 20, 2015)(rejecting argument that defendant's knowledge that an injury would occur in Ohio as insufficient to establish minimum contacts, citing *Maxitrate Tratamento Termico e Controles v. Super Sys.*, 617 Fed. Appx. 406 (6th Cir. 2015) and *Walden v. Fiore*, 134 S. Ct. 1115, 1123-26 (2014)); *see also Kern v. VIP Travel Servs.*, 2017 WL 1905868 (W.D. Mich. May 10, 2017)(granting motion to dismiss TCPA claim where non-resident defendant took no action in Michigan, and lawsuit was predicated on telephone calls made by a third party).

Plaintiff argues that the four calls were almost certainly routed by Defendants' software through Defendants' California computers and networks, but that still does not show purposeful availment by *Defendants* in *Ohio*.

> [P]urposeful availment is something akin to a deliberate undertaking to do or cause an act or thing to be done in the forum state or conduct which can be properly regarded as a prime generating cause of the effects resulting in the forum state, something more than a passive availment of the forum state's opportunities. The purposeful availment requirement is satisfied when the defendant's contacts with the forum state proximately result from actions by the defendant <u>himself</u> that create a substantial connection with the forum State, and when the defendant's conduct and

connection with the forum are such that he should reasonably anticipate being haled into court there.

*Bridgeport Music, Inc. v. Still N The Water Pub.*, 327 F.3d 472, 478 (6th Cir. 2003) (internal citations, quotations, and alterations omitted, emphasis in original). In *Bridgeport*, the plaintiff had argued that the defendant had "purposefully availed itself" in the forum state by issuing licenses to a third party, because the defendant allegedly had "a financial interest" in the third party selling as much of its product as possible, even if that meant that the third party violated the laws of the forum state. The Sixth Circuit found the defendant's conduct to be insufficient because knowledge that the third party was "likely" to distribute compositions nationally along with its lack of objection to sales in Tennessee was "insufficient conduct upon which to predicate purposeful availment." Id. at 480. Following *Bridgeport*, the hypothetical knowledge that a non-Ohio based electric services company, using Defendants' software, might call an Ohio customer in a manner that violates the TCPA, cannot be viewed as the *Defendants*' "purposeful" availment in Ohio.

Notably, Plaintiff does not rely upon an "agency" theory for the exercise of personal jurisdiction in this case.[10] A defendant can be "haled into court" if the defendant is a principal in an agency relationship, and the *agent* has contacts with the forum state. *See, e.g., Kroger Co. v. Dornbos*, 408 F.2d 813, 816 (6th Cir. 1989); *S.*

---

[10]Plaintiff's Second Amended Complaint contains conclusory allegations under the heading "Liability for Actions of Agents" which generally state that all principals are liable for the actions of an agent. However, nowhere does Plaintiff allege which among the seventeen original defendants are "principals" or "agents," nor does he ever make any specific agency arguments pertaining to the conduct of any of the Salazar Defendants vis a vis the unknown telemarketer or unidentified electric service company. *See Cunningham v. Health Plan Intermediaries Holdings*, LLC, 2018 WL 835222 (N.D. Ill. Feb. 13, 2018)(granting motion to dismiss for lack of personal jurisdiction and for failure to state a TCPA claim, holding that "deficient and conclusory allegations…that all Defendants act as agents of all other Defendants" insufficient to overcome motion to dismiss for lack of personal jurisdiction).

*Mach. Co., Inc. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968). Indeed, a non-resident seller's liability when it contracts out its marketing to a telemarketer who acts as its agent is well-established. *See, e.g., In re DISH Network, LLC*, FCC 13-54, 28 F.C.C.R. 6574, 2013 WL 1934349 (May 9, 2013); *Lyngaas v. Curaden AG*, 2018 WL 1251754 (E.D. Mich. March 12, 2018)(Canadian seller of toothbrushes subjected to personal jurisdiction for alleged TCPA violation by telemarketer). Here, however, the Defendants' unrebutted affidavit states that they have never done business with either NStar Electric or Eversource Energy.[11] Thus, NStar was not an agent of the Defendants. In addition, NStar is located in Massachusetts, such that even if Defendants had provided NStar Electric with a DID number, that would not have been conduct that should subject these California Defendants to jurisdiction in Ohio.

Even if Plaintiff had properly alleged some form of "agency" theory to establish any of the Defendants' alleged contacts with Ohio, Sixth Circuit case law precludes application of such a theory on the record presented. Although a defendant can be held responsible for the actions of an agent, a defendant cannot be forced into court based on the theory that it "ratified" the conduct of a telemarketer that never identified the defendant, and never acted or purported to act as an agent on behalf of the defendant. *See, e.g., Johansen v. Homeadvisor, Inc.*, 218 F. Supp.3d 577, 585-87 (S.D. Ohio 2016)(granting motion to dismiss TCPA claim against non-resident purchaser of sales leads based upon a lack of personal jurisdiction, where telemarketer was not acting or purporting to act as agent of defendant); *see also DISH Network*, 28 F.C.C.R. at 6593

---

[11]This is assuming that Plaintiff's "belief" is correct and that the seller on whose behalf the call was made, or the caller itself, was either NStar or Eversource.

("we do not think that an action taken for the benefit of a seller by a third-party retailer, *without more*, is sufficient to trigger the liability of a seller under [the Do Not Call provision of the TCPA]")(emphasis added).

Neither Ohio's long-arm statute nor the Due Process Clause supports personal jurisdiction here. The California Defendants cannot be forced to appear in Ohio on the basis of four phone call "contacts" with Plaintiff's residential phone line that were not made by Defendants themselves, but by an unknown telemarketer (or someone associated with a telemarketer), who purchased and used Defendants' software and dialing technology and presumably made calls on behalf of an entirely different (also unknown) energy company. *Accord Arnold v. Grand Celebration Cruises*, LLC, 2017 WL 3534996 (D.N.M. Aug. 16, 2017)(granting defendant's motion to dismiss TCPA claim based on alleged activity of unidentified telemarketer, noting plaintiff does not know who called him, and only speculated that if it was not one defendant, it must have been another, where plaintiff's declaration did not contradict defendant's representation that it did not direct or control any call or employ any third party to make any outbound telemarketing call).

Unlike in *Advanced Dermatology*, where the defendant seller's name was on the unwanted fax, there was no reference to any of the Defendants on the calls. Even if one of the Defendants (or an entity associated with Salazar) leased the identified number from a California company, which an unknown third party telemarketer then used to make a sales pitch on behalf of an unidentified electricity supplier, the Defendants' relationship with the calls is simply too insubstantial to support jurisdiction. The purposeful availment requirement "ensures that a defendant will not be haled into a

jurisdiction solely as a result of random, fortuitous or attenuated contacts or unilateral activity of another party or a third person." *Burger King*, 471 U.S. at 475. Therefore, this Court lacks personal jurisdiction over the Defendants under Ohio's long-arm statute or the Due Process Clause of the U.S. Constitution. *Accord International Shoe Co.*, 326 U.S. at 316.

### C.  Alternative Dismissal Under Rule 12(b)(6)

The undersigned alternatively would recommend the dismissal of Plaintiff's claims against the Salazar Defendants for failure to state any claim. Although notice is required before *sua sponte* dismissal under Rule 12(b)(6), see *Morrison v. Tomano*, 755 F.2d 515 (6th Cir. 1985), this Report and Recommendation provides the requisite notice, because Plaintiff may file objections before the district judge.

TCPA regulations concerning voice calls are based upon the premise that telemarketers and the sellers on whose behalf the calls are placed may be held liable for unsolicited calls made in violation of the Act. *See generally Imhoff Investment, L.L.C. v. Alfoccino*, Inc., 792 F.3d 627, 635 (6th Cir. 2015). The FCC's *DISH Network* ruling clarified the regulatory definitions of "seller" and "telemarketer" by holding that "the party that is directly liable for unlawfully 'initiat[ing]' such a call is the telemarketer that 'takes the steps necessary to physically place a telephone call,' *not* the seller whose goods or services the telemarketer promotes." *Id.*, (quoting *DISH Network*, 28 F.C.C.R. at 6575 ¶3, 6583 ¶¶26-27)(emphasis original). On the facts presented, Plaintiff has sued neither the "seller" nor the "telemarketer" but instead seeks to hold Defendants liable merely for providing "services" to the telemarketer.

Plaintiff propounded much the same theories, though he more plainly identified them as theories of vicarious or contributory liability, in the first case that he filed in this Court, *Lucas v. Telemarketer*, Case No. 1:12-cv-630-TSB. In that case, Plaintiff similarly targeted a group of corporations and individuals (the "Accuardi Defendants") that he alleged were liable for supplying telephone numbers to various telemarketing clients, from which the telemarketers would make unlawful calls to Plaintiff's residence. The Accuardi Defendants argued that Plaintiff failed to state any claim under the TCPA and related state laws, because he had not alleged a formal agency relationship but argued only that they "aided and abetted" the telemarketers' illegal calls, by consciously avoiding knowledge that their clients were using the assigned telephone numbers for illegal telemarketing purposes. Plaintiff also alleged that the Accuardi Defendants financially benefited from every call, whether legal or illegal, that their clients made. On March 20, 2014, after exhaustive analysis, the undersigned recommended granting the Accuardi Defendants' motion to dismiss nearly all state and federal claims against them – with the exception of a claim that two Defendants were directly liable for initiating certain calls. (*See id.*, Doc. 91). For various procedural reasons, that March 2014 R&R was not ruled upon until June 5, 2017. However, it was then adopted in full as the opinion of this Court. *See id.*, 2017 WL 2436925 at *3 (S.D. Ohio June 5, 2017)(agreeing that *DISH Network* is incompatible with Plaintiff's theory of liability and that TCPA does not support theory that defendants "initiated" any of the calls).

Plaintiff essentially has repackaged the same theory of liability in this case, citing a 2015 FCC ruling. However, in that ruling, the FCC reiterated:

We find persuasive the logic in our *DISH Declaratory Ruling* analysis that "a person or entity 'initiates' a telephone call when it takes the steps necessary to physically place a telephone call, and generally does not include persons or entities, such as third-party retailers, that might merely have some role, however minor, in the causal chain that results in the making of a telephone call." We find that a person who dials the number of the called party or the number of a collect calling service provider in order to reach the called party, rather than the collect calling service provider who simply connects the call, "makes" the call for purposes of the TCPA.

*Id.*, 30 FCCR at 7986, 2015 WL 4387780, at *15 (internal citation omitted); *see also id.* at 7983-7984 (holding maker of cloud based texting app did not make or initiate a call when an app user sends a message).

The undersigned finds no legal support in FCC 15-72 or in case law for the resurrection of any theory analogous to the theory this Court previously rejected in Case No. 1:12-cv-630.  *See generally, Murray v. Choice Energy, LLC,* Case No. 1:15-60, 2015 WL 4204398 (S.D. Ohio July 10, 2015)(dismissing seller, despite allegation that defendant was "so involved" with telemarketer's call that direct liability was appropriate, where plaintiff did not make any allegation that defendant had "active role or involvement in placing the calls, such as giving [telemarketer] 'specific and comprehensive instructions as to the timing and the manner of the call," plaintiff failed to include factual allegations plausibly showing agency relationship, and no allegations supported vicarious liability theory); *Cunningham v. Health Plan Intermediaries Holdings, LLC*, 2018 WL 835222 (N.D. Ill. Feb. 13, 2018)(dismissing technology company who allegedly facilitated unwanted phone calls by providing phone numbers and caller ID services to other defendants); *Freidman v. Massage Envy Franchising, LCC*, 2013 WL 3026641 at *4 (S.D. Cal. 2013)("[T]he Court declines to…extend liability under the TCPA to any beneficiary of the alleged unlawful actions" where Defendant

was neither the seller nor the telemarketer who initiated the call/text); *Thomas v. Taco Bell Corp.*, 879 F. Supp. 2d 1079 (C.D. Cal. 2012)(vicarious liability rules mean more than passive permission by national franchisor, granting summary judgment to defendant where it did not direct or supervise the manner and means of message, or send the message).

### III.    Plaintiff's Motion to Hold Defendants In Contempt of Court

In addition to Defendants' motion to dismiss, Plaintiff has moved for an order holding Rodolfo Salazar in both criminal and civil contempt of court "on the grounds that Salazar has committed perjury."  (Doc. 146). Plaintiff's motion seeks the imposition of civil penalties, based upon what Plaintiff asserts are contradictory statements made by Salazar in his sworn affidavit.  In the first statement, Salazar explains the basis of the business conducted by the two entity Defendants:

> Defendants, 310 Network, Inc. ("310 Network") and NexInteractive, Inc. ("NexInteractive") are companies that provide PBX Telephony Services, specifically, software systems, to companies that operate various types of call services and call service centers.

(Doc. 124-1 at ¶1).   However, in later statements, Salazar explains that "NexInteractive, Inc…. was never a functioning entity," and therefore could not have been the entity that leased the offending DID phone number from Ladera, and that Defendant 310 Network, Inc. also "was no longer a functioning entity in 2015" but instead, quit doing business on December 31, 2014, prior to the February 2015 phone calls.   Plaintiff seizes on Salazar's use of the present tense in the first statement, that Defendants "are" companies that "provide" PBX services to argue that at least one of Salazar's statements must be false, and therefore constitute perjury made before this Court.

Plaintiff reasons that either the corporations exist or they do not, but that Salazar's statements appear contradictory because he asserts both that the companies "provide" software services and that they ceased doing business prior to the calls being made.

Plaintiff argues that the statements are "highly material" since if neither of the two Salazar entity Defendants was in business in February 2015, then they "cannot be liable." (Doc. 146 at 7). He argues that Salazar has organized various businesses as a corporate "shell game" to evade legal responsibility for the actions of the various entities when it suits his purposes, alleging that NexInteractive has been suspended in the State of California for nonpayment of taxes. (*See also* Doc. 68, Plaintiff's motion for default judgment, advising that 310 Network is "FTB Forfeited" and that NexInteractive, Inc. is "FTB Suspended").[12]

Acknowledging that this case "involves just four telephone calls," and relatively low statutory damages, Plaintiff argues that Salazar's "perjury" is "more serious," such that this Court should impose "a default judgment [in Plaintiff's favor] as an appropriate sanction for the civil contempt," along with additional civil sanctions. Said sanctions presumably also would be awarded directly to Plaintiff based upon the "enormous amount of my time…wasted due to Salazar's lies regarding which corporations are responsible for 'NexInteractive.'" (Doc. 146 at 10).

In his response in opposition, Defendant Salazar, through counsel, fundamentally denies that the statements constitute perjury, arguing that at most, they are the

---

[12]As Defendants point out, Plaintiff has made similar arguments regarding Salazar's alleged "lies" in other motions and objections filed with this Court. (*See, e.g.*, Docs. 68, 87, 115, 117, 120 and 123). Although Plaintiff's current motion contains a distinct legal argument, nearly all of the prior arguments have been rejected. (*But see* Doc. 156 at 19, noting that Plaintiff "could possibly" further explore the challenged statements in discovery).

"ambiguous" statements made by an individual who is a small business owner with far less litigation experience than Plaintiff.[13] He argues that the use of the present tense in the first statement does not make perjurious the statements that the two entity Defendants were not operating in February 2015 when the offending calls were made. Instead, counsel explains his client's use of verb tense as an unfortunate but inadvertent ambiguity created by someone who was a "former" shareholder of defunct corporations, who "did not understand the concept of legal claims and defenses or the legal distinction between legal entities." (Doc. 157 at 8). Through counsel, Defendant Salazar draws legal distinctions between an "operating" company and those such as the two Defendant entities, described as "legally existing" companies "formed to do the business described by Salazar," despite their nebulous corporate status. (Doc. 157 at 7). Defendant denies that he tried to hide any relevant information, pointing to interrogatory responses in which he provided more specific information about the exact dates when 310 Network and NexInteractive, Inc. were doing business.[14]

This Court does not condone Salazar's disregard for corporate formalities, *if* Plaintiff's allegations are true.[15] At the same time, however, the undersigned recommends the denial of Plaintiff's motion as much ado about nothing on the facts presented. Plaintiff cites to two federal perjury statutes. The first, 18 U.S.C. § 1621, provides for criminal penalties for anyone who "willfully and contrary to .. oath" testifies

---

[13]Salazar made and/or repeated the statements after he was represented by counsel.
[14]Defendant further argues that the statements do not evidence "bad faith" and therefore are not sanctionable under *Chambers v. Nasco, Inc.*, 501 U.S. 32 (1991). The undersigned agrees that the statements do not amount to sanctionable conduct under *Chambers* or related Sixth Circuit case law.
[15]This Court also cannot condone some of Plaintiff's own conduct in this case, including but not limited to his *ad hominem* attack on defense counsel. (See Doc. 146 at 7-8, arguing that "[a]nybody competent to pass the bar exam would understand one of the statements must be a lie.").

or declares a "material matter which he does not believe to be true." Likewise, the second statute, 18 U.S.C. § 1623(c), requires proof that the individual "in any proceedings before or ancillary to any court…knowingly made two or more declarations which, beyond a reasonable doubt, are inconsistent to the degree that one of them is necessarily false." *Id.* (emphasis added). Proof of which declaration is false is not necessary as long as the declaration was "material." *Id.*

Both statutes clearly require an intentionality that is not demonstrated on the record here. Ultimately, the statements go to the issue of Salazar's credibility but do not demonstrate actual "perjury" or bad faith conduct. Aside from the lack of sufficient proof of intentionality, however, the contested statements simply are not material to this case. As fully explained above, Defendants are not subject to the personal jurisdiction of this Court even if one or both Defendants were still doing business in February 2015.[16]

IV. **Conclusion and Recommendation**

For all of the reasons discussed above, **IT IS RECOMMENDED THAT:**

1.  The Salazar Defendants' motion to dismiss for lack of personal jurisdiction (Doc. 124) should be **GRANTED**;

2.  Plaintiff's motion for civil and/or criminal contempt (Doc. 146) should be **DENIED**.

 *s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

---

[16]The undersigned has assumed, without researching the issue, that this Court could exercise limited jurisdiction to impose civil contempt against Defendant Salazar even if the Court lacks personal jurisdiction on the underlying claims.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

VINCENT LUCAS,                                          Case No. 1:16-cv-790

        Plaintiff,                                  Barrett, J.
                                                       Bowman, M.J.

    v.

DESILVA AUTOMOTIVE SERVICES, et al.,

        Defendants.

**NOTICE**

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).