UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

VINCENT LUCAS,                                              Case No. 1:16-cv-790

        Plaintiff,                                            Barrett, J.
                                                              Bowman, M.J.

    v.

DESILVA AUTOMOTIVE SERVICES, et al.,

        Defendants.

## REPORT AND RECOMMENDATION

**I.    Background**

Plaintiff Vincent Lucas ("Lucas") is an experienced *pro se* litigant who frequently litigates claims against Defendants that he believes have illegally placed telemarketing calls to his home telephone number.[1] Plaintiff initiated this lawsuit more than three years ago on July 27, 2016, by paying the requisite filing fee and filing a complaint that alleged only that three "John Doe" Defendants had violated federal law by engaging in illegal telemarketing practices. The original complaint alleged that John Doe 1 placed twelve calls to Plaintiff's residential phone number "[s]ince May 2016" on unspecified dates "to sell me a vehicle warranty." (Doc. 1 at ¶6). Additionally, Plaintiff alleged that on

---

[1] Plaintiff has pursued at least eleven lawsuits in this Court, most of which contain similar allegations of illegal telemarketing practices. In addition to the above-captioned case, *see, e.g.,* Case No. 1:11-cv-409 (closed), Case No. 1:12-cv-630 (closed), Case No. 1:15-cv-108 (closed), Case No. 1:16-cv-790, *Case No.* 16-cv-1102, Case No. 1:16-cv-1127 (closed), Case No 1:17-cv-47 (closed); Case No. 1:17-cv-374 (transferred), Miscellaneous Case No. 1:17-mc-02 (closed), and most recently, Case No. 2:18-cv-582. Plaintiff previously has informed this Court of related litigation he has pursued in several state courts.

1

unspecified dates "[s]ince May 2015, I have received eleven calls from Defendant John Doe 2," the purpose of which was "to sell me a vacation package." (*Id.* at ¶9). Last, Plaintiff alleged that on unspecified dates "[s]ince May 2015, I have received twenty calls from Defendant John Doe 3," intended "to sell me a home security system." (*Id.* at ¶10).[2]

Although Plaintiff failed to identify any of the three "John Does" and did not serve anyone for the first four and a half months after filing suit, in December 2016 he filed an Amended Complaint that replaced the unidentified John Does with a list of sixteen Defendants alleged to be responsible for various calls on specific dates. (Doc. 3). Plaintiff's Amended Complaint greatly expanded (and changed) the factual underpinnings of his claims as well as the list of target Defendants. For example, in place of minimal allegations concerning 12 calls on unspecified dates by John Doe 1, Plaintiff's Amended Complaint identified 15 calls between May 10, 2016 and July 28, 2016, alleged to have been made by multiple Defendants for the purpose of selling him a vehicle warranty. Two "vehicle warranty" calls allegedly placed on May 16 and on June 1, 2016 were alleged to have originated from a number assigned to Defendant Callvation, LLC and to have been "initiated by" and "made" by Callvation "on behalf of Defendant Allied Vehicle Protection, as its agent." (Doc. 3 at ¶¶16-18, 21-24).[3]

The original allegations against the "vacation package" caller (John Doe 2 in the original complaint) were amended to identify Defendant Yucatan Holidays SA DE CV. By

---

[2] Plaintiff never served his original complaint on any Defendant and it was superseded by his Amended Complaint, which Amended Complaint deleted references to "home security calls." However, either the same or very similar calls appear to have formed the basis for Plaintiff's complaints in Case Nos. 1:17-cv-374 and 1:18-cv-664.

[3] In the caption of the Amended Complaint, Plaintiff names "Desilva Automotive Services, LLC, d/b/a Allied Vehicle Protection, a California company" as the first Defendant.

contrast, the original allegations against the "home security system" caller (John Doe 3) were deleted entirely, and replaced with new claims against the "Bizmote Defendants" for calls concerning the sale of internet services, and against the "Power Supplier Defendants" concerning the sale of residential electric services.

With respect to the vehicle warranty calls, the record reflects that Plaintiff obtained service on Callvation through service on that entity's registered agent in February 2017, a date after the dissolution of that entity.[4] (Docs. 15, 36). Plaintiff had more difficulty in personally serving Jeffrey Torres, in part because Plaintiff did not know Torres's address. However, after conducting pre-service discovery on that issue, Plaintiff appears to have located the correct "Jeffrey Torres" out of the 113 possibilities that he originally identified. (Doc. 35). Plaintiff returned a summons form indicating that he had served the proper Defendant Torres by certified mail on April 21, 2017.[5] (Doc. 78). On the basis of Plaintiff's application to the Clerk of Court, Plaintiff obtained entries of default against both Callvation and Torres on his first amended complaint. (*See* Docs. 56, 58, 85, 86).

On September 12, 2017, more than a year after Plaintiff filed suit, the undersigned granted Plaintiff leave to file a second amended complaint. (*See* Doc. 108, Second Amended Complaint). The second amended complaint eliminated a half dozen Defendants including Allied Vehicle Protection and other Defendants that Plaintiff had voluntarily dismissed, (*see* Docs. 60, 77, 79), but also added one new Defendant, Protect Us Now, LLC., in place of Defendant, Vilfil Translation Services LLC. (Doc. 84). Plaintiff

---

[4] Callvation was dissolved as a Florida LLC a few months after the offending calls, on December 19, 2016. (Doc. 35-1).
[5] The executed certified mail form contains an illegible signature, which the undersigned can only assume to be that of Mr. Torres, since the place for "printed name" has been left blank.

chose not to serve Callvation and Torres with the second amended complaint, and – importantly - did not seek new entries of default against those Defendants.

On October 19, 2017, the undersigned filed a Report and Recommendation ("R&R") that recommended rulings on approximately a dozen motions, most of which had been filed by Plaintiff. (Doc. 122). Relevant to Plaintiff's recent motion to reopen this case in order to enter a default judgment against Defendants Callvation and Jeffrey Torres, the 2017 R&R recommended denying Plaintiff's first motion for default judgment against those two Defendants. The undersigned explained that the second amended complaint superseded the first amended complaint on which Plaintiff had obtained his entries of default. Therefore, "Plaintiff's second amended complaint renders moot the prior entries of default against both Defendants on Plaintiff's first amended complaint." (Doc. 122 at 7).

Despite this unequivocal holding, the R&R contained dictum noting the undersigned's "several [additional] concerns." (*Id.*) Specifically, although the undersigned stated that service on a non-appearing defendant of a second amended complaint "may not be <u>required</u> under Rule 55(b)(2), Plaintiff is forewarned that courts and commentators alike have 'gone to considerable lengths to impose the requirement that notice be given of an application for a default judgment'" *even in the absence of a formal court appearance.* (*Id.* at 8, emphasis original, citations omitted). Plaintiff had represented that he had been in contact with Mr. Torres by telephone, and that Torres had indicated that he was living with his parents and planned to file for bankruptcy protection if judgment were rendered against him. Based on the cited authority and the facts presented, the undersigned "encourage[d] Plaintiff to attempt some form of service of any future motion

4

on Mr. Torres." (*Id.*) As a second concern, the undersigned questioned the legal basis for awarding prospective injunctive relief as part of the default judgment, and referred to prior rulings and Sixth Circuit case law suggesting that the entry of piecemeal default judgments prior to the conclusion of a case is disfavored. (*Id.*) The third concern addressed by the R&R was with Plaintiff's alteration of facts and legal theories in his second amended complaint, as compared to his earlier complaint against the two referenced Defendants, notwithstanding Plaintiff's contention he was not technically adding new claims. (*Id.* at 9). The undersigned also questioned Plaintiff's request for the same monetary damages for a call made by an artificial or pre-recorded voice as "for a call on which no words were spoken and the caller hung up." (*Id.*)

Plaintiff vigorously objected to portions of the R&R, (Doc. 123), including the recommended denial of default judgment against Callvation and Torres. On March 31, 2018, Judge Barrett largely adopted the recommended holdings of the R&R for the opinion of the Court. (*See* Doc. 156).[6] Although Judge Barrett did not discuss the additional concerns expressed in dictum, Judge Barrett exhaustively addressed Plaintiff's disagreement with the holding that the second amended complaint rendered moot the prior entries of default against Callvation and Torres:

> Plaintiff argues that the second amended complaint cannot render moot the prior entries of default, because the second amended complaint never became "operative." He offers the following logic: his second amended complaint added no new claims against Defendant Callvation LLC and Torres; thus, he was not required to serve his second amended complaint on Defendants Callvation LLC and Torres, pursuant to Rule 5(a)(2); thus, he never served the second amended complaint, consistent with Rule

---

[6] Despite the adoption of the portion of the R&R that dismissed Defendants Vilfil Translation Service LLC, Protect Us Now, LLC, and James and Gregory Filippo, the docket sheet does not reflect the termination of those Defendants.

5

> 5(a)(2); thus, it never became operative against Defendants Callvation LLC and Torres; thus, it cannot render moot the prior entries of default.
>
> Rule 5(a)(2) states: "No service is required on a party who is in default for failing to appear. But a pleading that asserts a new claim for relief against such a party must be served on that party under Rule 4." According to Plaintiff, Rule 5(a)(2) requires this Court to treat his second amended complaint as operative upon service, not filing. For the reasons stated below, this argument fails.
>
> Numerous courts have held that an amended complaint becomes operative upon filing, thus mooting a clerk's prior entry of default….

(Doc. 156 at 3-4, collecting cases).

Judge Barrett went on to explain that Plaintiff had "misconstrue[d]" the "non-binding Second Circuit case" on which Plaintiff chiefly relied, *Intern. Controls Corp. v. Vesco*, 556 F.2d 665, 669 (2nd Cir. 1977). (*Id.* at 4). The Court explained that *Vesco* created a narrow exception, allowing default judgment to be entered on an earlier version of the complaint <u>only</u> when a plaintiff had added a new claim against a defendant in default, but was "*unable* to personally serve the same defendant a second time." *Id*. at 6 (emphasis added). Judge Barrett determined that the *Vesco* exception was inapplicable, and that default judgment could not be entered on prior entries of default that had been rendered moot through the filing of Plaintiff's second amended complaint. (*Id.* at 8).

> Plaintiff mistakenly believes that ….the *Vesco* holding would save his prior entry of default. It does not…. Plaintiff has adamantly maintained that his second amended complaint need not be served on Defendants Callvation LLC and Torres, per Rule 5(a)(2), because it adds no new claims for relief against them. This is true…..[T]he second amended complaint (Doc. 103) became operative against [Callvation and Torres] upon filing….As a result, Plaintiff's prior entry of default was issued based on an inoperative complaint, so the Court cannot enter default judgment against Defendants Callvation LLC and Torres unless Plaintiff moves based on the amended operative complaint….

(*Id*. at 9-10).

6

Judge Barrett overruled Plaintiff's objections to the entry of default judgment against other Defendants on identical grounds, emphasizing that the earlier entries of default had been rendered moot.

> As discussed above, the clerk's entry of default against Defendant Salazar was mooted once Plaintiff filed his second amended complaint. Defendant Salazar, having defaulted on an earlier complaint, is akin to Defendants Callvation, LLC, Torres, 310 Network, and NexInteractive, Inc.… As a defendant in default, Defendant Salazar was not necessarily "entitled" to service of an amended complaint adding no new claims against him, even though he received such service anyway. Regardless, it was incumbent upon Plaintiff to seek an entry of default against Defendant Salazar based on the second amended complaint which became operative upon filing. Thus, the Magistrate Judge was correct to deny the Motion for Default.

(Id. at 17-18). To reiterate, Judge Barrett held that all prior entries of default against the Defendants had been rendered moot, and that Plaintiff would be required to seek new entries of default against the referenced Defendants based on his second amended complaint.

Defendants 310 Network Inc., NexInteractive Inc., and Rodolfo Salazar (hereinafter the "Salazar Defendants") later moved to dismiss Plaintiff's claims against them, asserting that this Court lacked personal jurisdiction over them. (Doc. 124). Plaintiff's claims against the three Salazar Defendants were based upon a total of four telephone calls that Plaintiff received on separate dates in February 2015. On May 1, 2018, the undersigned filed an R&R that recommended granting the Salazar Defendants' motion to dismiss and denying Plaintiff's motion to hold the Defendants in both civil and criminal contempt. (Doc. 161). On March 31, 2019, the presiding district judge overruled Plaintiff's objections and adopted the May 2018 R&R as the opinion of the Court. (Doc. 165). However, based upon what appears to have been a mistaken belief that *all* matters

had been resolved by the dismissal of the Salazar Defendants, the Court further directed the case to be "CLOSED AND TERMINATED from the active docket of this Court." (*Id.* at 7). A final judgment was entered on the same date. (Doc. 166).

Three days later, on April 3, 2019, Plaintiff filed a motion captioned as a "Renewed Motion for default judgment against Callvation, LLC and Jeffrey Torres; **Reopen Case**." (Doc. 167 at 1, emphasis added). Within the body of the motion, Plaintiff pointed out that "the claims against Callvation and Torres remain unresolved," based in part on this Court's earlier denial of Plaintiff's motion for default judgment against those two non-appearing Defendants. (*Id.*) On April 29, 2019, Plaintiff filed a Notice of Appeal, appealing to the Sixth Circuit for relief from this Court's March 31, 2019 presumed Final Order and Judgment. (Doc 168).

**II. Analysis**

**A. Threshold Jurisdictional Issue**

As a threshold issue, the undersigned must consider whether this Court has any authority to rule on Plaintiff's renewed motion for default judgment. Plaintiff's motion was filed as a post-judgment motion, because it was filed after the entry of a final judgment. Soon after filing the motion, however, Plaintiff filed a Notice of Appeal of the order on which the entry of judgment was based. "The filing of a notice of appeal is an event of jurisdictional significance - it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Discount Co.,* 459 U.S. 56, 58, 103 S.Ct. 400 (1982) (per curiam).

Under Fed. Rule App. P. 4(a)(4), however, a district court may rule upon a timely filed motion to alter or amend the judgment under Rule 59, Fed. R. Civ. P., or for relief

8

under Rule 60 when that motion was filed not later than 28 days after the judgment is entered. *See* Rule 4(a)(4)(A)(iv) - (vi). Plaintiff's post-judgment motion to "reopen case" in order to enter a default judgment against the non-appearing remaining Defendants does not specifically cite to either Rule 59 or Rule 60. At the same time, Plaintiff clearly seeks to correct this Court's premature dismissal of the remainder of his case. Given the unmistakable intent of the Plaintiff to correct an error in the entry of final judgment, and the prompt filing of Plaintiff's motion, the undersigned will construe the motion as one to alter or amend judgment under Rule 59(e). *See Reno v. Int'l Harvester Co.*, 115 F.R.D. 6, 7 (S.D. Ohio 1986) (construing pro se motion for reconsideration or to reopen case under Rule 60(b)(6), but suggesting that motion would have been construed as a motion to alter or amend if filed within ten days of judgment).

When a party files a notice of appeal after the court enters a judgment but before the trial court disposes of a motion filed under Rule 59 or Rule 60, as Plaintiff has done in this instance, the district court retains jurisdiction to rule on the pending motion to alter or amend judgment, and the Notice of Appeal "becomes effective to appeal a judgment or order, in whole or in part, when the order disposing of the last such remaining motion is entered." Fed. Rule App. Proc. Rule 4(a)(4)(B)(i). However, if the party seeks to challenge the disposition of the Rule 59 motion or a judgment's alteration or amendment upon such motion, the party must file either a new notice of appeal or an amended notice of appeal. Rule 4(a)(4)(B)(ii).

### B. Plaintiff's Construed Rule 59(e) Motion Should be Granted in Part

To the extent that Plaintiff's motion to reopen this case is construed under Rule 59(e) to set aside the prematurely entered final judgment, and/or to alter or amend that

9

judgment to include the disposition of claims against non-appearing Defendants Callvation and Torres, Plaintiff's motion should be granted. At the same time, as explained below, Plaintiff's motion for default judgment should be denied.

### C. Plaintiff's Motion for Default Judgment Against Both Defendants Should Be Denied Based on the Absence of Entries of Default

A Rule 55(b) motion for default judgment cannot be filed in the absence of an entry of a default under Rule 55(a). More than a year ago, on March 31, 2018, this Court denied Plaintiff's motion for default judgment against Defendants Callvation and Torres because the *only* entries of default that existed in the record at that time had been rendered moot by the filing of Plaintiff's second amended complaint in September 2017. As the Court emphasized in reaching the same conclusion with respect to another Defendant against whom the prior entry of default had been rendered moot, "it was incumbent upon Plaintiff to seek an entry of default … based on the second amended complaint which became operative upon filing. Thus, the Magistrate Judge was correct to deny the Motion for default." (Doc. 156 at 18).

Notwithstanding Judge Barrett's ruling some 16 months ago, the record does not reflect that Plaintiff has *ever* sought entries of default against any Defendant (including Callvation and Torres) on his second amended complaint. Plaintiff makes much of the fact that in the prior R&R, the undersigned expressed a concern, based on Sixth Circuit case law disfavoring the entry of default judgments in a "piecemeal" fashion, about the timing of Plaintiff's motion for default judgment under Rule 55(b), prior to the conclusion of his case.[7] However, the undersigned has never discouraged Plaintiff from promptly

---

[7] Presumably because that portion of the prior R&R denying default judgment was dictum and unnecessary

10

seeking an entry of default under Rule 55(a) once a defendant is in default. In contrast to the timing of a Rule 55(b) motion, ordinarily a party should seek an entry of default under Rule 55(a) as soon as practicable after a defendant has failed to appear – typically soon after a complaint is filed. On the facts presented here, Plaintiff was required to re-apply for entries of default once the Defendants failed to appear after the filing of his second amended complaint in September 2017.

Plaintiff insists that his current motion for default judgment "is based on the <u>operative</u> complaint," meaning the second amended complaint rather than the first amended complaint on which his first motion for default judgment was based. (Doc. 167 at 4, emphasis original).[8] Plaintiff's insistence does not excuse his failure to follow the requisite procedural steps. Multiple courts have held that under Rule 55, Fed. R. Civ. P., before moving for judgment by default, "the proponent must first request the clerk's entry of default pursuant to Rule 55(a)." *American Auto. Ass'n v. Dickerson*, 995 F. Supp.2d 753, 756 (E. D. Mich. 2014); see also Devlin v. Kalm, 493 Fed. Appx. 678, 685-86, 2012 WL 3241656 at **607 (6th Cir. Aug. 9, 2012) (collecting cases). Citing the same "two-step process," Judge Barrett has held in other cases that "[a] court may properly deny a motion for default judgment if an entry for default was not obtained first." *Bey v. Elmwood Place Police Dept.*, 2017 WL 3821458 at *5 (S.D. Ohio Sept. 1, 2017) (citing *Reed-bey v. Pramstaller*, 607 Fed. Appx. 445, 449 (6th Cir. 2015)). Because Plaintiff failed to comply with the explicit direction of this Court that he first obtain entries of default on his second

---

for the Court's decision, Judge Barrett did not address it.
[8] Plaintiff emphasizes the Court's holding that service of the second amended complaint was not required, but states that he sent a copy of his motion and the second amended complaint to Callvation at its last known address. (Doc. 167 at 4). He does not state that he extended the same courtesy to Defendant Torres.

11

amended complaint, the undersigned recommends the denial of Plaintiff's second motion for default judgment against Callvation and Torres.[9]

### D. The Court Should Exercise its Discretion to Deny Default Judgment and Dismiss this Case

The undersigned has explained why she recommends reopening this case under Rule 59(e) to correct an error: namely, that claims against two non-appearing Defendants, Callvation and Torres, were not fully resolved at the time that this case was closed. The undersigned has further explained why the failure of Plaintiff to previously move for entries of default on his second amended complaint against Callvation and Torres mandates the denial of his present motion.

I now further recommend that the Court exercise its discretion to dismiss the remainder of the claims against the non-appearing parties at this juncture, rather than allowing Plaintiff additional time to continue to drag this case out for relatively small (and likely uncollectable) statutory damages. The entry of default judgment is a remedy of last resort, and always remains within a Court's discretion. "Judgment by default is a drastic step which should be resorted to only in the most extreme cases." *United Coin Meter Co. v. Seaboard Coastline Railroad,* 705 F.2d 839, 845 (6th Cir.1983). As another district court has explained:

> Even after entry of default, the decision to grant a default judgment is within the Court's discretion. *Flaks v. Koegel,* 504 F.2d 702, 707 (2d Cir.1974); *see also* 10A Charles A. Wright et al., Federal Practice and Procedure § 2685 (3d ed. 1998) ("This element of discretion makes it clear that the party making the request is not entitled to a default judgment as of

---

[9] In a footnote that discusses Rule 5(a)(2), Judge Barrett points out that in order to determine who is a "defaulting defendant," "no entry of default by the clerk is required." (Doc. 156 at 6, n.2, id. at 9, n.3, internal citations omitted). However, the cited proposition has no application in determining whether the separate procedural requirements of Rule 55(b) have been met, as an examination of the cases cited by Judge Barrett and *infra* by the undersigned make clear.

right, even when defendant is technically in default and that fact has been noted under Rule 55(a)."). In determining whether to enter a default judgment, courts typically consider factors such as:

the amount of money potentially involved; whether material issues of fact or issues of substantial public importance are at issue; whether the default is largely technical; whether plaintiff has been substantially prejudiced by the delay involved; and whether the grounds for default are clearly established or are in doubt.10A Wright et al. at § 2685.

*AF Holdings LLC v. Bossard*, 976 F.Supp.2d 927, 929 (W.D. Mich. 2013).

Very little of Plaintiff's case against seventeen defendants concerning dozens of unwanted telemarketing calls remains. Following the dismissal of the Salazar Defendants, all that remains are Plaintiff's claims for relief against a company that was dissolved in Florida in 2016, shortly after the two offending phone calls, and an individual who is not alleged to have any particular involvement in the calls other than serving as an officer of the dissolved company. Plaintiff has demonstrated no real harm resulting from the two telephone calls, other than 2-3 minutes of his time (at most, since he admits that the single "hang-up" call lasted only 21 seconds); instead, he is pursuing relatively small statutory damages under the TCPA and related Ohio law. This Court has expended an inordinate amount of judicial resources on this case, including but not limited to Plaintiff's two motions for default judgment. Allowing Plaintiff additional time to first move for entries of default before following up with a third motion for default judgment after such a lengthy delay, and considering that Plaintiff was clearly advised of the correct procedural course some 16 months ago, would be prejudicial to the public interest in obtaining the prompt resolution of cases. The undersigned therefore recommends dismissal of the minimal remaining claims filed by Plaintiff against the only two remaining non-appearing Defendants.

### E. Plaintiff's Motion for Default Judgment Also Should be Denied as to Torres Based on his Failure to State a Viable Claim

Both in addition and in the alternative, the undersigned recommends denial of default judgment against Defendant Torres concerning the two calls based upon the insufficiency of Plaintiff's allegations to state a claim. While factual allegations against a non-appearing defendant will be accepted as true, judgment will not be entered unless it appears that those allegations support liability as a matter of law. *See e.g., Johnson v. Levi Strauss,* 2009 WL 4806467 (S.D. Ohio Dec. 9, 2009) (default judgment cannot be entered when the complaint fails to state a claim upon which relief can be granted).

Before turning to the scant allegations against Torres, it is worth pointing out that Plaintiff's first amended complaint alleged that Callvation was liable under an agency theory for making two calls on behalf of another party that allegedly made the bulk of the vehicle warranty calls. Once that party was dismissed from Plaintiff's second amended complaint, Plaintiff revised his allegations against Callvation to assert a more direct theory of liability, alleging that Callvation initiated a call on May 16, 2016 using a pre-recorded female voice in order to sell Plaintiff a vehicle warranty. (Doc. 108 at ¶¶16, 18-19, 21-22). In the second call allegedly initiated by Callvation and received on June 1, 2016, no words were spoken and the caller hung up after 21 seconds. (*Id.* at ¶¶17-18, 20-22).

In contrast to his allegations that Callvation "initiated" the two calls, Plaintiff's allegations against Torres are vague in the extreme. Using the conjunction "or," Plaintiff asserts that Torres, "acting alone or in concert with others, personally formulated, [or] directed, [or] controlled, [or] had the authority to control, or participated in the acts and practices of Callvation set forth in this Complaint." (*Id.* at ¶26; *see also id.* at ¶94: "On

information and belief, Torres, James Filippo, Gregory Filippo, and Salazar personally participated in or authorized the violation of the TCPA and OCSPA."). Based on such conclusory allegations, Plaintiff argues that Torres is personally liable, citing *Texas v. American Blastfax, Inc.*, 164 F. Supp.2d 892, 897 (W.D. Tex. 2001). However, in the Texas case, the court based its holding on overwhelming <u>evidence</u> produced by the state that the two individual defendants who were sole officers, directors and shareholders and who oversaw and directed day-to-day operations of Blastfax were jointly and severally liable for the entity's TCPA violations, agreeing with State of Texas that personal liability was based on individuals *actually committing* the conduct that violated the TCPA and not merely because of their status as officers. *Id.*

The Sixth Circuit has yet to rule whether officers of an entity may be held personally liable under the TCPA in the absence of any specific allegations that set forth an individual's involvement beyond their capacity as an officer or director. However, this Court and others have dismissed similar TCPA claims in the absence of any factual allegations that would show direct and personal participation in the conduct found to have violated the statute. *See Lucas v. Telemarketers Calling from (407) 476-5670 and Other Telephone Numbers*, Case No. 12-cv-630, 2014 WL 1119594 at *18 (dismissing claims against individual officers as derivative of claims against entities and containing insufficient allegations to impose personal liability, with one exception, finding Lucas's allegations that several individuals were "actively involved in management" or "participated in tortious behavior" to be overly conclusory and insufficient to state a claim); *accord Cunningham v. Local Lighthouse Corp.*, 2017 WL 4053759 at *3-4 (M.D. Tenn. Aug. 7, 2017) (dismissing conclusory allegations against co-owners of corporation alleged

15

to have made illegal telemarketing calls, discussing cases); *Cunningham v. Rapid Response Monitoring Servs., Inc.*, 251 F. Supp.3d 1187 (M.D. Tenn. 2017) (same).

Although a complaint need not contain detailed factual allegations, Plaintiff must provide the grounds for the entitlement to relief sought. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007); s*ee also Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937 (2009). The factual allegations contained in the complaint must be enough to show a plausible right to relief. *Twombly*, 550 U.S. at 555–61, 127 S.Ct. 1955. Other than the vague allegations referenced above concerning Torres's alleged "control" of Callvation while "acting alone or in concert with others," Plaintiff has alleged only that he "is the sole officer of Callvation listed in the records of the Florida Secretary of State," and "[o]n information and belief, he is also the majority owner of Callvation." (Complaint at ¶25).

Even considering the liberal pleading standards of Rule 8, Plaintiff's minimal and conclusory allegations against Torres concerning just two calls allegedly placed in May and June 2016 are insufficient to demonstrate liability. A complaint does not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 (quoting *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955); *see also generally, Cunningham v. Kondaur Capital*, 2014 WL 8335868, at *8 (M.D. Tenn., 2014) (denying experienced pro se litigant leave to amend his TCPA claim to add corporate officers, holding that amendment would be futile based upon insufficiency of facts alleged). Some of Plaintiff's theories of recovery have previously been rejected by this Court, including in a case recently affirmed by the Sixth Circuit. *See Lucas v. Telemarketer Calling from (407) 476-5680*, Case No. 1:12-cv-630, R&R filed 3/20/14,

(Doc. 91) (rejecting personal liability of officers, state law invasion of privacy and nuisance, Ohio Consumer Sales Practices Act, and other claims, adopted June 5, 2017 (Doc. 195), *aff'd* at 2019 WL 3021233 (6th Cir. May 29, 2019); *Lucas v. Gotra*, Case No. 1:18-cv-664-TSB (Doc. 40, R&R filed 07/25/19, recommending denial of default judgment against individual officers on similar grounds).

### III. Conclusion and Recommendation

Accordingly, **IT IS RECOMMENDED THAT:** (1) the Court should exercise jurisdiction under Rule 59(e) to grant Plaintiff's motion to reopen this case (Doc. 167); (2) once reopened, the Court should amend its prior Order and Judgment to deny Plaintiff's motion for default judgment against Callvation LLC and Jeffrey Torres (Doc. 167), and should instead dismiss all remaining claims against them; and (3) this case should be CLOSED, as all claims against all Defendants will have been resolved.[10]

                                                                             *s/Stephanie K. Bowman*
                                                                             Stephanie K. Bowman
                                                                             United States Magistrate Judge

---

[10] The docket also should be corrected to reflect Plaintiff's prior dismissal of all claims against James and Gregory Filippo, Protect Us Now, LLC and Vilfil Translation Services, LLC (Doc. 156, granting Doc. 94).

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

VINCENT LUCAS,                                                   Case No. 1:16-cv-790

       Plaintiff,                                    Barrett, J.
                                                          Bowman, M.J.

    v.

DESILVA AUTOMOTIVE SERVICES, et al.,

       Defendants.

**NOTICE**

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).